UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RODNEY KARMAN,

                Plaintiff,

v.                                                Case No.  5:09-cv-169-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits. (Doc. 1.)  The Commissioner has answered (Doc. 5) and both parties have filed memoranda outlining their respective positions.  (Docs. 13 & 14.)  For the reasons discussed below, the Commissioner's decision is due to be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. §405(g).

### I. PROCEDURAL HISTORY

On September 17, 2004, Plaintiff filed an application for disability insurance benefits claiming a disability onset date of December 5, 2001 due to a history of stomach problems, shoulder problems and depression. (R. 100-05.)  Plaintiff's applications were denied initially and upon reconsideration. (R. 21-28; 61-66.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 6, 2007. (R. 741-59.)  On April 17, 2007, the ALJ issued a

decision unfavorable to Plaintiff. (R. 29-42.)   Plaintiff requested review of the decision and on October 10, 2007, the Appeals Council remanded the case to the ALJ. (R. 71-72.)  A supplemental hearing was held on June 24, 2008 (R. 760-90.)  In a decision issued on August 5, 2008, the ALJ again found Plaintiff not disabled. (R. 8-19.)  The Appeals Council denied Plaintiff's request for review. (R. 2-3.)  Plaintiff then appealed to this Court.   (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]

---

[1] 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from
(continued...)

However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

---

[4](...continued)
evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was forty-five years old on the date last insured – December 31, 2006. (R. 28, 411.)  Plaintiff completed the 8th grade and obtained a GED and has past relevant work experience as a laborer and foreman in interior construction. (R. 114, 118, 763-64.)  Plaintiff contends that he has been unable to work since December 5, 2001 when he sustained a work-related injury to his right upper extremity that required right shoulder surgery. (R. 105, 416.)

---

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] Id.

[21] Doughty at 1278 n.2.

Plaintiff testified that he has problems with both shoulders, hands, wrists, right elbow, hips and neck. (R. 765-68.)  He had right shoulder surgery to repair a torn labrum, but it did not help and his shoulder condition worsened after surgery. (R. 769.) He had left ring finger trigger finger release on January 6, 2004. (R. 175.)  He is treated by Oregon K. Hunter, M.D. for pain management, and has been for the past 6-7 years. (R. 769.)  He is prescribed Lortab; side-effects include drowsiness and digestive problems. (R. 770.)  Plaintiff also has seen Paula S. Lovett, Ph.D., Ramon Enrique Pino, M.D. and T.R. DeRoche, Ph.D. for depression. (R. 769-70.) Plaintiff has been diagnosed with Barrett's esophagus. (R. 179-91.)

Plaintiff has difficulty sitting due to discomfort in his neck, shoulders and back. He can sit for about 20-30 minutes before needing to change positions; stand for about 15 minutes at a time; and walk for 15 minutes to his mailbox and back.  (R. 772-74.) Some days he is unable to walk because it increases his shoulder pain.  (R. 774.) Plaintiff has trouble with memory and concentration.  (R. 774.)

Based on his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff had an adjustment disorder with mixed emotional features, depression and anxiety with allegations of panic attacks, a pain disorder, and a somatoform disorder based on pain related to psychiatric and general medical symptoms associated with Barrett's esophagus, colon polyps, internal hemorrhoids, a remote gunshot would to the left leg, an injury to the left foot and low back secondary to a motor vehicle accident in 1982, and status-post right shoulder impingement and labial repair of January 11, 2001, right deQuevain's syndrome, and left hand pain and flexor tendinitis, status post left hand

flexor release. (R. 10-15.)  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.  (R. 15-16.)

The ALJ then found that Plaintiff retained the RFC to perform light work as defined in 20 CFR 404.1567(b).   Plaintiff can be expected to lift or carry up to 20 pounds occasionally and 10 pounds frequently; sit, stand or walk for about 6 hours each in an 8-hour workday; perform pushing or pulling motions of no more than the above weight restrictions; occasionally climb stairs or ramps, but never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; limited in reaching with his right upper extremity; no visual or communicative limitations; and his only environmental limitation is to avoid hazards such as unprotected heights or moving machinery.  As for mental limitations, Plaintiff has mild restrictions of activities of daily living and maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace.  These mental limitations result in moderate limitations in the ability to carry out detailed instructions, to maintain attention, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to interact appropriately with the general public.  (R. 16-17.)

The ALJ then concluded that Plaintiff could not perform any past relevant work. (R. 18.)  Based on the testimony of the VE, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have

Case 5:09-cv-00169-GRJ   Document 15   Filed 09/28/10   Page 8 of 12 PageID 76

performed. (R. 18-19.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. 19.)

## IV. DISCUSSION

Plaintiff argues that the ALJ improperly ignored the findings and opinions of two of Plaintiff's treating physicians – Dr. Hunter and Dr. De Roche.  It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[22]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[23]

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[24]  Where a treating physician has merely made conclusory statements, the

---

[22] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[23] 20 C.F.R. § 404.1527(d)(2).

[24] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

8

ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[25]

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.[26] However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.[27]

Here, while the ALJ discussed Dr. Hunter's treatment notes from August 2002 through January 2005, he failed to even mention Dr. Hunter's notes from March 2005 through 2008, as well as the questionnaire Dr. Hunter completed on January 17, 2007 in which he found Plaintiff was limited to less than sedentary work with a need to periodically lie down and the opportunity to shift at will from sitting or standing/walking. (R. 478-517, 623-34; 635-36; 662-738.)   Defendant concedes that the ALJ failed to discuss these records but argues that this was harmless error because remand would serve no practical purpose, would not alter the ALJ's findings and would be a waste of judicial and administrative resources.  The Court disagrees.

---

[25] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

[26] 20 C.F.R. § 404.1527(d).

[27] Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527(d)(2).

As an initial matter, the fact that the questionnaire was completed two weeks after Plaintiff's date last insured does not render it *per se* irrelevant to Plaintiff's condition prior to December 31, 2006. Defendant argues that Dr. Hunter completed an assessment during the relevant time period, in August 2002, which was "generally consistent" with the ALJ's RFC finding (R. 368) and that Dr. Hunter's subsequent treatment notes show no new diagnosis or significant new objective findings prior to his date last insured.

On August 13, 2002, Dr. Hunter performed a comprehensive medical evaluation. On examination, Plaintiff was in no acute distress; there was minimal pain behavior; gait was normal; mildly restricted passive range of motion of the right shoulder but not significant compared to the left; some tightness of the left ring finger; full passive range of motion of all four extremity joints without crepitation or instability; no upper or lower extremity instability; tone was normal in all four extremities; and good motor strength throughout all four extremities, however in the hands there was slightly decreased grip. Dr. Hunter recommended that Plaintiff be limited to light level of lifting and carrying. (R. 364-67.) He agreed that MMI was reached on December 5, 2001 and that Plaintiff has a 24% impairment of the upper extremity for the right shoulder and a 3% impairment of the upper extremity for the right wrist. That same day, Dr. Hunter completed an "Activity Level Estimation" in which he found that Plaintiff could perform full-time work with the following restrictions: lift and carry up to 20 pounds; perform grasping or fine manipulations with both hands, but could not perform pushing, pulling or reaching with his right hand; and occasionally reach, push or pull with his feet. (R. 368.)

From August 2002 through January 2005, Dr. Hunter treated Plaintiff for chronic intractable pain syndrome, right shoulder impingement surgery, labrum tear repair, right de Quervain's syndrome, left hand pain, and flexor tendinitis. (R. 322-67.) During this period, Dr. Hunter noted that there was no change in Plaintiff's activity status. However, Dr. Hunter continued to treat Plaintiff for another three years, seeing him at least 26 times, nine of which visits occurred before Plaintiff's date last insured. Beginning in October 2006, Dr. Hunter noted that Plaintiff was limited to sedentary work and Dr. Hunter noted that Plaintiff had restricted motion of the right shoulder, restricted motion of the cervical spine, rigidity of the right neck and shoulder girdle region and guarded use of the right upper extremity. (R. 623-34.) While the ALJ might have concluded that Dr. Hunter's questionnaire was not supported by the evidence, the ALJ was required to state a reason(s) for not crediting the opinion of Dr. Hunter. This failure to address Dr. Hunter's findings and opinion was exacerbated by the absence of other medical records regarding Plaintiff's physical impairments after January 2005. Accordingly, the case must be remanded to enable the Commissioner to reevaluate in accordance with the law the findings and opinion of Dr. Hunter.

Plaintiff also argues that the ALJ ignored the May 30, 2008 historical summary drafted by Dr. DeRoche, Plaintiff's treating psychologist. (R. 739-40.) While this summary significantly post-dates Plaintiff's date last insured, Dr. De Roche discusses Plaintiff's mental condition during the insured period. Accordingly, on remand the ALJ should consider the opinion of Dr. De Roche.[28]

---

[28] The Court finds no error in the ALJ's consideration of the opinions of Dr. Pino and Dr. Lovett.

11

Moreover, in finding Plaintiff's subjective complaints not wholly credible, the ALJ found that Plaintiff's shoulder pain and neck pain "can be expected to be exacerbated by heavy and/or even medium exertion" and that his musculoskeletal pain and hypertension were treated conservatively. (R. 17.) However, in making these findings, the ALJ failed to consider all of the findings and opinions of Dr. Hunter. As such, on remand, the ALJ should reconsider Plaintiff's subjective complaints in light of Dr. Hunter's findings and opinions.[29]

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner, for an Administrative Law Judge to: (1) reassess Plaintiff's RFC, fully addressing the opinions of Dr. Hunter and Dr. DeRoche and Plaintiff's subjective complaints; and (2) conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter final judgment in favor of Plaintiff and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 28, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

---

[29] Based on the Court's finding, the ALJ must reconsider Plaintiff's RFC on remand. Accordingly, the Court need not address Plaintiff's argument that the ALJ ignored the requirements of SSR 96-8P when determining Plaintiff's RFC; nor need it consider Plaintiff's argument that the ALJ erred at Step 5.